**Kyle A. RUHS, Plaintiff-Appellant,**

v.

**PACIFIC POWER & LIGHT, a Maine Corporation, Defendant-Appellee.**

**No. 80–1412.**

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Sept. 29, 1981.

Decided March 3, 1982.

---

David Jaroslawicz, New York City (Paul B. Godfrey of Godfrey & Sundahl, Cheyenne, Wyo., with him on the brief), for plaintiff-appellant.

William S. Bon of Schwartz, Bon & McCrary, Casper, Wyo. (Richard E. Day of Williams, Porter, Day & Neville, Casper, Wyo., with him on the brief), for defendant-appellee.

Before HOLLOWAY, McKAY and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Plaintiff Kyle A. Ruhs (Ruhs) was seriously injured while trimming trees around the power lines of defendant Pacific Power and Light (Pacific). Ruhs sued Pacific for negligence in this Wyoming diversity action. The district court granted Pacific's motion for summary judgment on the ground that Pacific owed no duty of care to Ruhs. We hold that Pacific was not entitled to judgment as a matter of law and reverse for trial on the factual issues.

In January 1978, Ruhs was working for Wright Tree Service, Inc., which had a contract with Pacific to trim along Pacific's power lines. Ruhs was part of a three-man crew trimming trees along a power line in or near Greybull, Wyoming. Ruhs had done some pruning and trimming work for more than two years, but apparently had only a few days experience trimming near power lines. The crew used a truck equipped with a boom, with a bucket attached to the end of the boom. Ruhs was in the bucket, which had controls to operate the boom, and maneuvered between two energized lines, trimming with a chainsaw. Ruhs received a severe electrical shock, although it is unclear whether his body or the chainsaw touched the line, or whether the electricity arced. As a result of the shock, Ruhs had to have both his arms amputated at his shoulders.

In granting Pacific's motion for summary judgment, the district court held that (1) Pacific owed no general duty of care to the employee of an independent contractor such as Ruhs because, as a matter of law, the dangers were or should have been obvious; and (2) Pacific owed no duty of care to Ruhs under the National Electric Safety Code (NESC). We disagree with both of these conclusions.

Summary judgment must be denied if a genuine issue of material fact is presented to the trial court. *Exnicious v. United States*, 563 F.2d 418, 423 (10th Cir. 1977). In making this determination, the evidence must be viewed in the light most favorable to the party opposing the motion. *National Aviation Underwriters v. Altus Flying Service, Inc.*, 555 F.2d 778, 784 (10th Cir. 1977). Thus, summary judgment should be denied if differing inferences can be drawn from conflicting evidence. *Madison v. Deseret Livestock Co.*, 574 F.2d 1027, 1036 (10th Cir. 1978).

## APPLICABLE LAW

The negligence law of Wyoming is applicable in this diversity case. "The es-

sentials of negligence are duty on the part of defendant, failure to perform the duty, proximately causing damage to the plaintiff." *Danculovich v. Brown*, 593 P.2d 187, 195 (Wyo. 1979). The common law of negligence imposes a duty on defendants to exercise the degree of care required of a reasonable person in light of all the circumstances. *See Fegler v. Brodie*, 574 P.2d 751, 755 (Wyo. 1978). In addition, Wyoming has recognized a higher standard of care for businesses involving ultrahazardous instrumentalities. Exercising reasonable care under "all the circumstances" is still the standard, but greater care is required because the nature of the business is ultrahazardous. *See Pan American Petroleum Corp. v. Like*, 381 P.2d 70, 72–74 (Wyo. 1963).

> "While no absolute standard of duty in dealing with dangerous agencies can be prescribed, it is safe to say in general terms that every reasonable precaution suggested by experience and the known dangers of the subject ought to be taken . . . .
>
> " . . . If there [is] any substantial evidence of a failure in this regard, then a question of fact for the jury [is] presented."

*Id.* at 74 (citations omitted). The determination of the defendant's duty or standard of care under the particular circumstances is a matter of law for the court. *Maxted v. Pacific Car & Foundry Co.*, 527 P.2d 832, 835 (Wyo. 1974).

### A. Common Law Standard of Care

Relying upon the Wyoming case of *McKee v. Pacific Power & Light Co.*, 417 P.2d 426 (Wyo. 1966), and other cases outside Wyoming, the district court concluded that Pacific had no duty to alter the premises, to warn, or to protect Ruhs, because he was the employee of an independent contractor and the court found as a matter of law that the dangers were obvious or reasonably apparent to him. We believe the district court misconstrued *McKee.*

McKee was an electrician and lineman with 28 years of experience who was working on a cable belonging to a television company that had apparently contracted to attach its cable to the defendant's poles.

He was injured when a tie wire he was handling broke and came in contact with the defendant's high-voltage power lines. McKee testified that the operation was not complicated for him, that clearance between the wires was sufficient, that he was aware the high-voltage lines were energized and uninsulated, and that he had worked around similar installations numerous times. The Wyoming trial court, after hearing McKee's evidence at trial, directed the jury to return a verdict for the defendant.

On appeal, the Wyoming Supreme Court reiterated the general rules of negligence we have outlined above:

> "[T]he test to be applied in determining whether the negligence of an electric power company can be regarded as the proximate cause of an injury is whether, under all the circumstances, the injury might have been reasonably foreseen by a person of ordinary intelligence and prudence. See Annotation 69 A.L.R.2d 9, 19, § 4.
>
> Therefore, our question first of all is whether the probability of injury to someone who had a right to be in the vicinity of defendant's high-voltage power lines might have been reasonably anticipated by the power company. See 26 Am.Jur.2d, Electricity, Gas and Steam, § 43, p. 252."

*Id.* at 427. After reviewing the evidence and noting it was undisputed that the facilities were installed in compliance with the National Electric Safety Code, the court concluded that it need not determine whether the defendant was negligent because the plaintiff was barred from recovery as a matter of law:

> "Without deciding whether there was substantial evidence of a breach in the standard of care which defendant owed to plaintiff, we can say as a matter of law the accident, under the circumstances shown, necessarily resulted from one of the following: (1) From an unavoidable accident; (2) from the assumption of a risk as well-known to plaintiff as it was to defendant; or (3) from the contributory negligence of plaintiff. In none of

these events can defendant be held liable."

*Id.* at 428.

■ In the instant case, the district court's conclusion that the dangers were obvious or reasonably apparent to Ruhs as a matter of law cannot be sustained because the circumstances are far different from those in *McKee* and the evidence regarding what Ruhs knew about the dangers of high voltage wires is not undisputed. First, in *McKee* the plaintiff receiving the electric shock had 28 years' experience as an electrician and was admittedly as cognizant of the electrocution dangers as the power company. In the present case, Ruhs had only a few days' experience trimming near power lines and it is not clear the dangers of electrocution were obvious or reasonably apparent to Ruhs. Disputed facts such as the proper spacing of the electric lines and Ruhs' asserted belief that the lines were not energized support this conclusion. Viewing the evidence in the light most favorable to Ruhs, we cannot conclude as a matter of law that the dangers would be obvious or reasonably apparent to a man in Ruhs' circumstances. Nor can we conclude that a reasonable man in Ruhs' circumstances should have been as well informed as Pacific. These determinations are questions of material fact for the jury.

■ Moreover, in *McKee* the plaintiff's recovery was totally barred by his contributory negligence or assumption of the risk. In 1977, however, Wyoming enacted a comparative negligence statute that requires apportionment of fault when contributory negligence is " 'not as great as the negligence of the person against whom recovery is sought.' " *Brittain v. Booth*, 601 P.2d 532, 534 (Wyo. 1979) (quoting Wyo.Stat. § 1–1–109); *Danculovich*, 593 P.2d at 192. Under the comparative negligence statute, the defenses of contributory negligence and assumption of risk are no longer absolute defenses to a negligence action, but only form a basis for apportionment of fault. *Brittain*, 601 P.2d at 534. This statute is applicable in the present case because Ruhs'

accident occurred after its enactment. Thus, even if Ruhs was contributorily negligent or assumed the risk, his fault must be apportioned with any primary negligence of Pacific. *See Booth*, 601 P.2d at 534. The factual resolution of the degrees of negligence and contributory negligence belong to the province of the jury, not the court. *See Scales v. St. Louis-San Francisco Railway*, 2 Kan.App.2d 491, 582 P.2d 300, 306 (1978).

■ Contrary to the district court's conclusion, Ruhs' status as the employee of an independent contractor does not require that his suit be dismissed on summary judgment. Although the owner of premises who employs an independent contractor may not be liable to the contractor's employees for the *contractor's* negligence, *see, e.g., Parsons v. Amerada Hess Corp.*, 422 F.2d 610, 612–14 (10th Cir. 1970), the owner is responsible for his own negligence. *See McKee*, 417 P.2d at 427; 26 Am.Jur.2d *Electricity, Gas & Steam* § 53 (1966); 41 Am. Jur.2d *Independent Contractors* § 25 (1968). An independent contractor's employee who goes on the owner's premises is an invitee to whom the owner may be liable for injury caused by an unsafe condition of the premises. *Id.* at § 27. The duty to an invitee is that of reasonable care under all the circumstances, including the duty to take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use. *See McKee*, 417 P.2d at 427, 429; *Dudley v. Montgomery Ward & Co.*, 64 Wyo. 357, 192 P.2d 617, 622 (1948); W. Prosser, *Law of Torts* 392–93 (14th ed. 1971). Where an ultrahazardous instrumentality such as electricity is involved, the duty of the electric company to maintain safe premises is nondelegable. *See* 26 Am.Jur.2d *Electricity, Gas and Steam*, § 52, § 53 (1966).[1]

## B. Statutory Standard of Care

■ The standard of care may be imposed by statute as well as the common law. *Culver v. Sekulich*, 344 P.2d 146, 156 (Wyo. 1959). In the present case, a statute

---

1. We have referred to Am.Jur.2d as additional authority because we note that in *McKee*, 417 P.2d at 427, the Wyoming Supreme Court cited 26 Am.Jur.2d, *Electricity, Gas & Steam*.

imposing a duty may exist, for both parties and the district court assumed the National Electrical Safety Code[2] was applicable to Pacific at the time of the accident.[3] However, the basis for this assumption is unclear from the record. Ruhs cites section 15.1–20 of the Wyoming statutes (current version at Wyo.Stat. § 15–1–119) to support his claim that the provisions of the NESC are statutorily mandated in this case, but this statute merely provides in subsection (a) that "[a]ny city or town, *may adopt* by reference all [or] part of . . . any national . . . electrical codes." Wyo.Stat. § 15.1–20 (emphasis added). There is no evidence in the record that Greybull, Wyoming has enacted an ordinance adopting the NESC. In our Circuit, "[m]unicipal ordinances may not be judicially noticed by courts of general jurisdiction, but must be pleaded and proven as any other fact except where a statute specifically provides otherwise." *Dewell v. Lawson*, 489 F.2d 877, 879 (10th Cir. 1974).

■ Because the parties and the trial court assumed the NESC applies, we shall do so also for purposes of this opinion. On remand, the record should be clarified to show whether the NESC is statutorily mandated in this case. Even if the NESC was not adopted in the Greybull area, the code is still relevant as evidence bearing on the issue of whether the common law standard of reasonable care was followed, if it can be shown to be the custom of the industry to abide by the code. *See Pan American*, 381 P.2d at 75–76. *Accord, Madison*, 574 F.2d at 1039 & n.10 (10th Cir. 1978); *Muncie Aviation Corp. v. Party Doll Fleet, Inc.*, 519 F.2d 1178, 1180–84 (5th Cir. 1975).

■ In response to the motion for summary judgment in this case, Ruhs submitted an affidavit of an expert consulting engineer giving the expert's opinion that Pacific breached its duty under the NESC in several respects. The trial court held that certain sections of the code relied on by the expert apply only to an employer-employee

situation, and that no evidence supports the expert's conclusions that other sections of the code apply to this case. We disagree.

In an apparent reference to Part 4 of the 1977 NESC, the district court held as a matter of law that Pacific owed no duty to Ruhs because "other NESC sections mentioned by the consulting engineer pertain to an employer-employee situation and such was not the relationship between Ruhs and Pacific Power and Light." Rec., vol. I, at 176. We believe the district court erred in its limited construction of the code. Part 4 contains the rules for the operation of electric supply and communications lines and equipment and section 400 sets forth its scope and application:

> "The following work rules apply to the construction, maintenance, and operation of electric-supply and communications lines and equipment of *public utilities and similar systems.* These rules are intended to embody the requirements which are most important *from the standpoint of safety to employees and the public.*"

(Emphasis added). Included within this duty of care to the public is section 422, which sets guidelines for "handling energized equipment or lines." It provides:

> "*When to De-energize Parts.*
>
> *An employee shall not* approach, or *willingly permit others to approach,* any exposed ungrounded part normally energized except as permitted by Rule 422–B, *unless the supply equipment or lines are de-energized.*"

(Emphasis added). Contrary to the trial court's conclusion, the "others" referred to in section 422–D include the public as well as employees of Pacific. *See* § 400. Viewing the evidence in the light most favorable to Ruhs, there is at least a genuine issue of fact as to whether employees of Pacific were negligent because they "willingly" permitted Ruhs to work around energized lines. *See, e.g.,* Kusko Affidavit, rec., supp. vol. I, at 28–9; Deposition of Don Dyer, rec., vol. II, at 122–26.

---

2. The National Electrical Safety Code applicable to this case is the 1977 edition.

3. Pacific stated in answer to interrogatories that "it appears that the provisions of the Na-

tional Electric Safety Code . . . would be applicable." Rec., vol. I, at 21. *See also* the District Court Order Granting Defendant's Motion for Summary Judgment, rec., vol. I, at 176–77.

The affidavit of Ruhs's expert is sufficient to raise factual issues concerning Pacific's breach of duty under other provisions of the NESC. As an example, section 210 of the 1977 NESC provides:

"210. *Design and Construction*

All electric supply and communication lines and equipment shall be of suitable design and construction for the service and conditions under which they are to be operated."

Ruhs's expert avers in his affidavit that a willow tree making the area unsafe should have been removed and that there was not adequate working space and clearance between the lines where Ruhs was trimming. The expert also concluded from a review of the evidence that Ruhs would not have been injured if Pacific had provided proper working space and clearance. This affidavit is sufficient to raise a material factual dispute concerning the breach of a duty imposed on Pacific by section 210. *See Madison v. Deseret Livestock Co.*, 574 F.2d 1027, 1039 (10th Cir. 1978).

Furthermore, we do not agree with Pacific's contention that section 210 is inapplicable because section 202B–2 exempts installations already in existence before the 1977 edition of the NESC. It cannot be concluded as a matter of law that Pacific's installations are exempt inasmuch as section 202B–2 in the 1977 edition of the NESC only provides that "[e]xisting installations ... *which comply with prior editions of this code* need not be modified to comply with these rules." (Emphasis added). It is not clear from the evidence that these installations complied with prior editions of the code; instead, compliance appears to be a factual dispute between the parties that should be settled by the jury. *See* Kusko Affidavit, rec., supp. vol. I, at 26–27.

We have here cited only two examples of alleged NESC infractions. Ruhs' expert raised issues as to other sections of the code that may have been violated as well. These remain for full development of the facts on remand.

Summary judgment was inappropriate in this case because material issues of fact remain to be decided before liability, or lack of it, can be determined. The case is reversed and remanded for further proceedings consistent with this opinion.