CATHERINE BOWEN, Appellant, v NIAGARA MOHAWK POWER CORPORATION, Respondent.

Fourth Department, November 18, 1992

APPEARANCES OF COUNSEL

*Andrews & Ransford,* Syracuse *(William Andrews* of counsel), for appellant.

*Thomas J. Murphy,* Syracuse, for respondent.

### OPINION OF THE COURT

DENMAN, P. J.

■ We are presented with an issue of first impression in New York: whether an electric utility may be held liable in strict products liability for damages caused by a surge of an abnormally high voltage of electricity through its transmission and distribution lines. Resolution of this issue turns upon whether electricity may be deemed to be a product in a defective condition unreasonably dangerous to the user or consumer (see, Restatement [Second] of Torts § 402A). For the reasons articulated below, we hold that electricity is not a product for purposes of strict products liability. Plaintiff's causes of action based upon that theory, therefore, should be dismissed.

### I

The essential facts of this case are not in dispute. Plaintiff's house was destroyed by an electrical fire caused when a surge of electricity was carried through defendant's transmission and distribution lines and overheated the wiring at the house. Defendant concedes that the surge was created when a healthy tree limb fell on its transmission and distribution lines about two miles from plaintiff's house. The limb brought the 4,800-volt distribution line into contact with the 46,000-volt transmission line, resulting in the surge of an abnormally high voltage of electricity through the transmission line. According to plaintiff's experts, surge arresters on the transformer servicing plaintiff's house did not operate properly and allowed the abnormally high voltage to enter the house.

Plaintiff commenced this action against the utility alleging four causes of action: negligence, strict products liability, failure to warn, and breach of implied warranty. Defendant submitted a general denial and raised two affirmative defenses, contributory negligence and Tariff 207 of the Public Service Commission (PSC). Following discovery, plaintiff moved for summary judgment. In support of her motion, plaintiff submitted affidavits from three experts in the fields of

fire investigation and electrical engineering, all of whom concluded that the fire was caused by the surge of electricity. In response, defendant submitted an affidavit of counsel, asserting that there were issues of fact regarding its negligence and again raising Tariff 207 as an absolute defense. The IAS Court denied the motion, finding that there were questions of fact regarding "the proximate cause of the voltage surge" and the issue of defendant's control of the tree. The Court did not address the strict products liability claims or the applicability of Tariff 207.

## II

We agree that there are questions of fact precluding summary judgment on plaintiff's cause of action sounding in negligence, but we differ somewhat with the IAS Court regarding which questions of fact are in dispute. There is no dispute that the proximate cause of the voltage surge was the contact between the 46,000-volt distribution line and the 4,800-volt transmission line, resulting from the falling tree limb. Whether the limb was under defendant's control, however, is a question of fact that cannot be resolved on a motion for summary judgment. Additionally, plaintiff's experts have raised a question of fact whether the "surge arrestors" were functioning properly at the time of the fire.

■ With respect to defendant's reliance on Tariff 207, we find that the PSC regulations render the tariff inapplicable under the circumstances. The tariff provides that: "In case the supply of service shall be interrupted or irregular or defective or shall fail from causes beyond company's control or because of the ordinary negligence of company, its employees, servants or agents, company will not be liable therefor."

Section 218.1 of the PSC regulations, however, requires that regulated utilities, including "electric corporations", amend their tariff schedules by eliminating: "Provisions limiting the liability of the company for any damages resulting from the negligence of the company in connection with the supplying or use of electricity or gas or from the presence or operation of the company's structures, equipment, wires, pipes, appliances or devices on the consumer's premises" (16 NYCRR 218.1 [c]).

"[U]tility companies are not absolved from liability for ordinary negligence claimed as the result of the *supply or use of electricity,* as opposed to damages caused by the interruption of the supply of service" *(Zoller v Niagara Mohawk Power*

*Corp.,* 137 AD2d 947, 950). Moreover, defendant's reliance on the tariff disclaimer contravenes the public policy embodied in 16 NYCRR 218.1 *(Zoller v Niagara Mohawk Power Corp., supra).* Tariff 207, therefore, does not apply to plaintiff's negligence cause of action.

## III

Plaintiff's remaining causes of action—strict products liability, failure to warn, and breach of implied warranty—are predicated upon the assumption that electricity is a product as that term is used in the context of the doctrine of strict products liability. That would make one who sells electricity liable to the ultimate user or consumer if the electricity is in a defective condition unreasonably dangerous to the user, as long as it reaches the user or consumer without substantial change in the condition in which it is sold (Restatement [Second] of Torts § 402A; *see, e.g., Voss v Black & Decker Mfg. Co.,* 59 NY2d 102; *Codling v Paglia,* 32 NY2d 330).

We have found no New York case holding that electricity is a product in circumstances similar to those before us. Defendant relies on a decision of the Third Department in *Farina v Niagara Mohawk Power Corp.* (81 AD2d 700) to support its position that electricity is not a product for purposes of strict products liability. There, plaintiff's decedent came into contact with defendant's overhead power lines and was electrocuted. The Court granted the utility's motion to dismiss, finding "no case in this or any other jurisdiction which has permitted a plaintiff to recover for injuries sustained from contact with an electrical line on the theory of strict products liability" *(Farina v Niagara Mohawk Power Corp., supra,* at 700). The Court noted that refusal to apply the doctrine was based, among other factors, on the fact that electricity "is not a product within the contemplation of the doctrine's authors" *(Farina v Niagara Mohawk Power Corp., supra).* Courts in other jurisdictions similarly have rejected the argument that electricity is a product while it is still in a transmission line *(see, e.g., Smith v Home Light & Power Co.,* 734 P2d 1051 [Colo]; *Genaust v Illinois Power Co.,* 62 Ill 2d 456, 343 NE2d 465).

Here, however, the electricity had passed through the customer's electric meter. Under such circumstance, courts in some jurisdictions have held that electricity is a product because it has been placed in the stream of commerce and is no longer under the control of the supplier *(see, e.g., Smith v*

*Home Light & Power Co.*, 734 P2d 1051, 1055, *supra*). Plaintiff relies heavily on the analysis of the Wisconsin Supreme Court in *Ransome v Wisconsin Elec. Power Co.* (87 Wis 2d 605, 275 NW2d 641), a case factually indistinguishable from our own.* The court first determined that electricity was a product because it had been placed in the stream of commerce and was no longer in the control of the utility. The court then applied the doctrine of strict products liability against the utility, concluding that the public policy considerations weighed heavily in favor of the consumer. Specifically, the court determined that the supplier of electricity was in a much better position to "anticipate, protect against and eliminate possible dangerous electricity overloads" and could "more easily absorb or spread or insure against any financial losses which result" *(Ransome v Wisconsin Elec. Power Co., supra,* 87 Wis 2d, at 625, 275 NW2d, at 650). Similarly, in *Pierce v Pacific Gas & Elec. Co.* (166 Cal App 3d 68, 212 Cal Rptr 283), the court held that electricity was a product, relying on the policy justifications for imposing strict liability in circumstances where the utility is in a better position to diagnose and correct problems within the electrical distribution system.

■ While we recognize the legitimate and important policy considerations that support the imposition of strict products liability against electric utilities for damages caused by abnormally high voltage, we decline to adopt the reasoning of the Wisconsin Supreme Court and instead conclude that the provision of electricity is a service, not the sale of a product. In doing so, we agree with the analysis of the Supreme Court of Ohio in *Otte v Dayton Power & Light Co.* (37 Ohio St 3d 33, 523 NE2d 835). Although *Otte* involves stray voltage, the court's cogent discussion of the nature of electricity is applicable to the facts of our case. Electricity is the flow of electrically charged particles along a conductor. The utility does not "manufacture" electrically charged particles, "but rather, sets in motion the necessary elements that allow the flow of electricity" *(Otte v Dayton Power & Light Co., supra,* 37 Ohio St 3d, at 36, 523 NE2d, at 838). The consumer pays for electricity by kilowatt hour, that is, the length of time electricity flows through the system. There is no individual product. Instead, the consumer pays for use of the electricity.

We also find the analysis of the Ohio court compelling

---

* The only factual distinction is that in *Ransome (supra)* the surge of electricity was caused when lightning struck the transmission line.

insofar as it concerns the public policy considerations behind strict products liability: "We doubt whether the public policy considerations supporting the general imposition of strict liability are viable in an action against a highly regulated public utility. Generally speaking, the risk-allocation policy is applicable only when the industry affected may pass on its costs to the general public. A public utility in Ohio is highly regulated and price increases may only be established after administrative approval. Likewise, shifting the burden of proof in a products liability action to relieve the plaintiff of the burden of proving fault lacks force when applied to a highly regulated public utility. Although application of strict liability provides a strong impetus for manufacturers to create safer products and is a cogent and meaningful justification, we must again point out that the public utility does not operate in a free market * * * It is doubtful whether the imposition of strict liability would lead to a safer distribution system" *(Otte v Dayton Power & Light Co., supra,* 37 Ohio St 3d, at 40-41, 523 NE2d, at 841-842 [footnotes omitted]).

Under the circumstances of this case—a healthy tree falling on power lines, causing abnormally high voltage to pass through the lines and enter plaintiff's house—the imposition of strict products liability would have little if any impact on defendant's future conduct. Accordingly, the order should be modified dismissing the second, third and fourth causes of action and, as so modified, affirmed.

PINE, LAWTON, BOEHM and DOERR, JJ., concur.

Order unanimously modified, on the law, and as modified, affirmed, without costs, in accordance with the opinion by DENMAN, P. J.