**WYRULEC COMPANY, a Wyoming corporation, Appellant (Defendant),**

v.

**Richard SCHUTT, Appellee (Plaintiff).**

**Richard SCHUTT, Appellant (Plaintiff),**

v.

**WYRULEC COMPANY, a Wyoming corporation, Appellee (Defendant).**

Nos. 93–31, 93–32.

Supreme Court of Wyoming.

Dec. 30, 1993.

Lawrence G. Orr of Orr, Buchhammer & Kehl, Cheyenne, for Wyrulec Co., appellant in 93–31; appellee in 93–32.

Michael E. Warren of Sawyer & Warren, P.C., Torrington, for Richard Schutt, appellee in 93–31; appellant in 93–32.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

GOLDEN, Justice.

These consolidated appeals arise from a negligence suit against appellant Wyrulec Company. Appellee Richard Schutt fell and sustained injuries after touching appellant's low voltage electrical wires. A jury verdict awarded $368,584 in damages and found appellant sixty percent negligent and appellee forty percent negligent. Appellant claims the trial court erred in refusing jury instructions applying WYO.STAT. § 37–3–304 (Supp. 1989), the High Voltage Power Lines and Safety Restrictions Act, and WYO.STAT. § 27–11–105(b)(vi) (Supp.1990), the general duty clause of the Wyoming Occupational Health and Safety Act, to the facts of this case. Appellee cross-appealed claiming the trial court erred in granting summary judgment that strict liability was inapplicable to the facts of this case and erred in refusing jury instructions regarding statute violations and assigning a higher duty of care because electricity is an ultrahazardous instrumentality.

We affirm.

## ISSUES

Appellant states the issues as:

I. Did appellee's failure to give notice to appellant of his intent to work around high voltage lines, as required by W.S.1977 § 37–3–304 operate as a bar to his cause of action against the appellant utility?

II. Did the trial court err in refusing to instruct the jury regarding the duties imposed on the appellee by provisions of the Wyoming High Voltage Power Lines and Safety Restrictions Act, W.S.1977 § 37–3–301 et seq.?

III. Did the trial court err in refusing to instruct the jury regarding the duties imposed on the appellee by provisions of the Wyoming Occupational Health and Safety Act, W.S.1977 § 27–11–105(b)(vi)?

Appellee rephrased the issues as:

I. Was W.S. § 37–3–304 (Wyoming's "High Voltage Power Lines and Safety Restrictions Act") applicable in this case?

II. Were the provisions of Wyoming's Occupational Health and Safety Act, herein referred to as OSHA, relevant in this case, and if so, was there a violation of those provisions?

On cross-appeal, appellant Schutt states the issues as:

I. Should the doctrine of strict liability apply in this case?

II. Did the trial Court improperly refuse plaintiff's jury instructions numbered 1, 2, 3, 4, 5 and 6?

Appellee rephrased as:

I. Did the trial court correctly rule that the doctrine of strict liability did not apply to a situation where overhead electrical lines were accidentally contacted by appellant?

II. Did the trial court commit reversible error in refusing to instruct the jury regarding specific provisions of the National Electric Safety Code?

## FACTS

Appellee Richard Schutt (Schutt), a general contractor, was shingling a roof at the Valley View Farms in Lingle, Wyoming. Overhanging one roof were two sets of wires owned by appellant Wyrulec Company (Wyrulec), a nonprofit rural electrical cooperative. The first set of three wires carried 7,200 volts and hung about sixteen feet above the roof. The second set of four electrical wires ran from a transformer to the house and carried voltage ranging from 110 to 240 volts. Although the distance of these four wires from the roof was disputed, it appears the bottom wire was no more than three feet above the roof. While working, appellee raised up into two of the low voltage electri-

cal wires and received electric shocks causing him to fall to the edge of the roof. Scaffolding stopped him from falling further, but the fall fractured two vertebrae. The fractures required surgical fusion of five vertebrae.

Before the jury trial, the district court granted Wyrulec's summary judgment motion to exclude the application of strict liability. At the trial, the court admitted testimony concerning Wyrulec's possible violations of the National Electric Safety Code codified at Wyo.Stat. § 37–3–114 and Schutt's possible violations of both the High Voltage Power Lines and Safety Restrictions Act, and Wyo. Stat. § 27–11–105(b)(vi), the general duty clause of the Wyoming Occupational Health and Safety Act. The court refused jury instructions specifically referring to these violations and also refused jury instructions assigning a higher degree of care because electricity is an ultrahazardous instrumentality. The court's specific instruction to the jury stated that "ordinary care means the degree of care which might reasonably be expected of the ordinary careful person under the same or similar circumstances."

## DISCUSSION

*HIGH VOLTAGE POWER LINES AND SAFETY RESTRICTION ACT*

■ Wyrulec's first two issues concern the applicability of Wyo.Stat. § 37–3–304 which states in pertinent part:

> 37–3–304. **Activity in close proximity to lines; clearance arrangements; procedure; payment; notice.**
>
> (a) If any person or business entity desires to temporarily carry on any act in closer proximity to any high voltage overhead line than permitted by this act, the person or business entity responsible for performing the work shall promptly notify the appropriate public utility and shall ask the public utility for assistance.

Wyrulec contends that the notice provision in paragraph (a) of this statute required Schutt to contact them. Although the statutory language indicates that notice depends upon whether the activity is in proximity to *high voltage* lines, Wyrulec argues the notice provision should apply when, as in this case,

the voltage of the lines is unknown. Wyrulec theorizes that since only notice would cause Wyrulec to have a duty to Schutt, his failure to notify bars his cause of action. We reject this interpretation of the statute.

■ This court's method of statutory interpretation is to read the text of the statute and pay attention to its internal structure and the functional relation between the parts and the whole. *Parker Land & Cattle Co. v. Wyoming Game & Fish Comm'n,* 845 P.2d 1040, 1045 (Wyo.1993). In order to ascertain its intent and general purpose and the meaning of each part, the five sections of this act are to be read in *pari materia* and construed as a whole. *Parker,* at 1042. The language is clear and unambiguous because its wording is such that reasonable persons are able to agree as to its meaning with consistence and predictability. *Parker,* at 1043. When the statutory language is unambiguous, the general rule is that the court will not resort to application of rules of construction. *Id.* We look to the plain, ordinary meaning of the language of the statute and apply that meaning. *Id.*

Wyo.Stat. § 37–3–302 defines high voltage as "voltage in excess of six hundred (600) volts measured between conductors or between a conductor and the ground." Section 37–3–303 of the act prohibits activity beneath a high voltage power line unless clearances exceed six feet. In this case, all power lines which exceeded 600 volts were at least sixteen feet above the roof. Section 37–3–304 of the act requires notice only when there will be activity in closer proximity to high voltage lines than is permitted under § 37–3–303. Section 37–3–305 only grants the utility a right of indemnity if this act is violated and damage occurs. There is no language that a cause of action would be barred.

■ We "will not enlarge, stretch, expand or extend a statute to matters not falling within its express provisions." *City of Cheyenne v. Huitt,* 844 P.2d 1102, 1104 (Wyo. 1993) (quoting *Lo Sasso v. Braun,* 386 P.2d 630, 632 (Wyo.1963)). "Where a statute enumerates the subjects or things on which it is to operate, or the persons affected, or forbids certain things, it is to be construed as exclud-

ing from its effect all those not expressly mentioned under the rule of *expressio unius est exclusio alterius.*" *Huitt,* 844 P.2d at 1104 (citing *Town of Pine Bluffs v. State Bd. of Equalization,* 79 Wyo. 262, 333 P.2d 700 (1958)).

It was undisputed that the wires' voltage which Schutt contacted ranged only from 110 volts to 240 volts. The purpose of this act was to forbid activity in close proximity to high voltage wires of 600 volts or more unless the utility was notified and safety arrangements were made. This statute does not apply to low voltage wires and therefore did not apply to the facts of this case. Wyrulec's contention that the statute applied because of Schutt's failure to ascertain the voltage of low lines over a roof would impermissibly expand its reach. Because this act does not apply in this case, the district court properly refused instructions for the jury to consider it.

## WYOMING'S OCCUPATIONAL HEALTH AND SAFETY ACT

■ Wyrulec's next issue requires us to consider whether WYO.STAT. § 27–11–105(b)(vi) was applicable in this case. This provision states:

> (vi) To require the employer to be charged with the following duties:
>
> (A) Each employer shall furnish to his employees, a place of employment and employment which are free from recognized hazards that are causing or that are likely to cause death or serious physical harm.

Wyrulec contends the district court should have instructed the jury on the contents of this provision. Applying the statutory interpretation method outlined above, we find the provision is unambiguous and its plain meaning is to protect employees. The provision is not relevant in a tort action between an employer and a third party. Wyrulec has not presented cogent argument or pertinent authority as to why this statute should apply in a negligence case between the employer and a third party. As this court has stated many times, issues which are unsubstantiated will not be addressed. *Davis v. State,* 859 P.2d 89, 94 (Wyo.1993).

## STRICT LIABILITY

On cross-appeal, Schutt contends strict liability applies to this case under the theories of product liability or the doctrine of *Rylands v. Fletcher.* We hold that strict liability under either theory is not applicable in this case.

### 1. *Product Liability.*

■ For the reasons articulated below, we do not find that electricity is a product within the definition of RESTATEMENT (SECOND) OF TORTS § 402A (1965). Wyoming adopted the RESTATEMENT as the definition of product liability in *Ogle v. Caterpillar Tractor Co.,* 716 P.2d 334 (Wyo.1986).

Classifying electricity as a product for strict liability purposes would make one who sells electricity liable to the ultimate user or consumer if the electricity is in a defective condition unreasonably dangerous to the user, as long as it reaches the user or consumer without substantial change in the condition in which it is sold. RESTATEMENT (SECOND) OF TORTS § 402A cmt. d (1965).

Section 402A was intended to apply to manufactured products delivered to the consumer or user without substantial change. Wyoming has never before considered whether electricity is a "product." Other courts have ruled on the question, however. Generally, those courts that have determined electricity is not a product have found:

> A "product" is anything made by human industry or art. Electricity appears to fall outside this definition. This is so because electricity is the flow of electrically charged particles along a conductor. [A utility] does not manufacture electrically charged particles, but rather, sets in motion the necessary elements that allow the flow of electricity. What we have here is a purported defect in the distribution system. Such a system is, in our view, a service.

*Otte v. Dayton Power & Light Co.,* 37 Ohio St.3d 33, 523 N.E.2d 835, 838 (1988). *Accord, Bowen v. Niagara Mohawk Power Corp.,* 183 A.D.2d 293, 590 N.Y.S.2d 628, 631 (4 Dept.1992). When the consumer pays by the kilowatt hour, he is simply paying for the

use of the electricity and not for an individual product. *Otte*, 523 N.E.2d at 838–39. We agree with this analysis of the nature of electricity and hold that electricity is a service and not a product.

Because RESTATEMENT, *supra* § 402A requires there be a "product" and does not apply to a service, strict liability in tort for damages caused by electricity is not a cause of action that may be asserted.

### 2. *Rylands v. Fletcher Doctrine.*

Schutt next contends that strict liability should be imposed because electricity is an abnormally dangerous activity as contemplated by RESTATEMENT (SECOND) OF TORTS § 519 (1977).

The abnormally dangerous activity theory for imposing strict liability evolves from the doctrine in *Rylands v. Fletcher*, L.R. 1–Ex. 265 (1866). In *Jacoby v. City of Gillette*, 174 P.2d 505 (1946), this court considered whether to adopt the *Rylands* doctrine. The rule of *Rylands* was:

> The person who for his own purposes brings on his lands and collects and keeps there anything likely to do mischief if it escapes, must keep it in at his peril, and, if he does not do so, is prima facie answerable for all the damage which is the natural consequence of its escape.

*Jacoby*, 174 P.2d at 509.

Wyoming, as had most states, rejected the notion that absolute liability should be imposed for anything brought onto the land which was not naturally there, escaped and caused damage. This court required that negligence must be shown. *Jacoby*, 174 P.2d at 512. We have since consistently imposed the standard of ordinary care under all of the circumstances rather than absolute liability. Although the rule of *Rylands* has evolved as defined by RESTATEMENT ONE and RESTATEMENT SECOND, the facts of this case do not require that we adopt strict liability rather than require a showing of negligence.[1]

### STANDARD OF CARE

Schutt next contends it was error for the district court to refuse to instruct the jury that Wyrulec owed a higher degree of care to him because electricity is an ultrahazardous activity. He relies on *Ruhs v. Pacific Power & Light*, 671 F.2d 1268 (10th Cir. 1982). Ruhs was injured by electricity after touching high voltage wires. The court reversed summary judgment granted to the defendants because it found there were issues of material fact as to whether Ruhs, a tree trimmer, knew about the dangers of high-voltage wires and whether electric company employees violated the National Electrical Safety Code.

As part of its discussion of Wyoming's applicable law, the court in *Ruhs* determined electricity was an ultrahazardous instrumentality. *Ruhs*, 671 P.2d at 1272 (citing 26 Am.Jur.2d *Electricity, Gas and Steam* §§ 52, 53 (1966)). The court then determined from *Pan Am. Petroleum Corp. v. Like*, 381 P.2d 70, 72–74 (Wyo.1963), that Wyoming has recognized a higher standard of care for businesses involving "ultrahazardous" instrumentalities.[2] However, the *Ruhs* court clearly stated that

> [e]xercising reasonable care under "all the circumstances" is still the standard, but greater care is required because the nature of the business is ultrahazardous.

*Ruhs*, 671 F.2d at 1271.

Our examination of *Pan American* confirms the accuracy of this statement. The plaintiff there had been injured after natural gas escaped from a well and caught fire. The jury was given a general instruction on the standard of care which is similar to the instruction given in the present case.

It was made clear to the jury what Pan American's duty was, and with respect to standard of conduct, the court instructed

---

1. Although the RESTATEMENTS first limited *Rylands* to "ultrahazardous" activity and then to "abnormally dangerous" activity, the doctrine has still achieved only limited acceptance. *See Wheatland Irrigation Dist. v. McGuire*, 537 P.2d 1128 (Wyo.1975).

2. *Pan American* referred to natural gas as a "dangerous agency"; however, we do not find any authority that the terms have a different meaning as used in these two cases. *Pan Am.*, 381 P.2d at 74.

as to a general rather than a special standard by saying negligence is a failure to observe for the protection of others that degree of care which the circumstances justly demand; in other words, it is the want of that care which an ordinarily careful person would exercise under all the circumstances of the case.

*Pan Am.,* 381 P.2d at 73.

Pan American contended the jury should have been instructed that the applicable standard of care was the custom of the industry. *Pan Am.,* 381 P.2d at 72. In the course of rejecting the notion that industry custom conclusively established due care, the court discussed the meaning of the standard of care when a dangerous instrumentality was involved. The court did not require a higher standard of care. Instead, it rejected an absolute standard of "duty" in dealing with dangerous agencies and held that it was proper for the jury to consider whether the defendant was negligent based on the hazards known to exist. *Pan Am.,* 381 P.2d at 74. As we stated there and have consistently stated ever since, the standard of care is ordinary care under *all* of the circumstances.

This is the standard of care regardless of whether a dangerous instrumentality is involved. It is not necessary to have degrees of care because the legal standard remains constant. FOWLER v. HARPER ET AL., THE LAW OF TORTS § 16.13 (2d ed. 1986 & Supp. 1993). Some jurisdictions do suggest that more than ordinary care is required. *See Fortman v. Dayton Power & Light Co.,* 80 Ohio App.3d 525, 609 N.E.2d 1296, 1299 (2 Dist.1992) ("A power company owes a duty to exercise the highest degree of care * * *. We are not prepared to protect a utility with a lower standard of care * * * "); and *see Cerretti v. Flint Hills Rural Elec.,* 251 Kan. 347, 837 P.2d 330, 339 (1992) (electric companies are under a duty to exercise the highest degree of care to prevent injury).

 However, we believe the standard is correctly stated as ordinary or reasonable care but what constitutes ordinary care increases as the danger increases. The concept of ordinary care accommodates all circumstances so that the degree of care varies with the circumstances. Ordinary

care which is "commensurate with the danger" does not impose a higher duty, "but more fully defines what is ordinary care under the facts presented." *Texas Utilities Elec. v. Gold Kist,* 817 S.W.2d 749, 753 (Tex. App.1991). *See also, Rich Mountain Elec. Co-op., Inc. v. Revels,* 311 Ark. 1, 841 S.W.2d 151, 153 (1992) (electric companies must exercise ordinary care); and *Rogers v. Grunden,* 589 N.E.2d 248, 256 (Ind.App.1992) (although some states require utmost care, we require ordinary care under like conditions and circumstances).

Appellee's contention that the jury should be made aware of this higher standard by jury instructions is incorrect. Under the proper circumstances, it is counsel's function to present the jury with argument that electricity's inherently dangerous nature requires the highest degree of care which in general terms means that every reasonable precaution suggested by experience and the known dangers of the subject ought to be taken. *Pan Am.,* 381 P.2d at 74.

## JURY INSTRUCTIONS

 Schutt's final issue also relies on the *Ruhs* case. He contends that the trial court erred in refusing jury instructions which instructed the jury that violations of the National Electrical Safety Code were evidence of negligence. However, he does not explain how the errors prejudiced him. It is the burden of the complaining party to establish an error as prejudicial. *McCarthy v. Whitlock Constr. & Supply,* 715 P.2d 218, 221 (Wyo.1986). An error is prejudicial if there is a reasonable possibility that in the absence of error the verdict might have been more favorable to the losing party. *Id.* Schutt does not explain either how the verdict might have been more favorable to him or in what manner he could be considered the losing party. Without cogent argument or pertinent authority, we decline to address these issues. *Davis,* 859 P.2d at 94.

The judgment of the district court is affirmed.

CARDINE, J., files a specially concurring opinion.

CARDINE, Justice, specially concurring.

I concur in the result but dissent from that portion of the opinion under "Standard of Care." This case involves an accident in which appellee touched a low voltage line and fell. Low voltage electricity is not ultrahazardous. It is something encountered in ordinary, normal daily activities when plugging in the coffee pot or toaster. It is like driving a car, something everyone does in the business of daily living; and so the activity is ordinary, and the duty is ordinary care. But the opinion assumes the activity (low voltage electricity) to be ultrahazardous and states the duty for one dealing with "dangerous agencies" as "ordinary care under all of the circumstances." It concludes: "This is the standard of care regardless of whether a dangerous instrumentality is involved. It is not necessary to have degrees of care because the legal standard remains constant." At 762.

I believe degrees of care are helpful because they move the law beyond a vague generality that no one can apply with any consistency; they are helpful in informing citizens more clearly what conduct is expected of them and what may result in liability; and I believe this, although it might be contrary to what is said to be the "enlightened" view. Finally, I believe courts rely too much upon the alleged "enlightened" or "modern" view propounded mostly by others with little trial or practical experience.

My problem with the majority's statement that "the standard of care [when dealing with extrahazardous activity] is ordinary care under *all* the circumstances," is that it is misleading. At 762. The statement leaves a jury with the impression that dealing with high voltage electricity is just an ordinary, everyday activity, no more significant than what is usually encountered. It is simply unfair to the injured party who most often suffers life threatening injuries or death. High voltage electricity (7,200 or 14,000 volts) is not "ordinary."

The majority opinion later states: "[W]e believe the standard is correctly stated as ordinary or reasonable care but what constitutes ordinary care increases as the danger increases," at 762, and then, quoting from

*Ruhs v. Pacific Power & Light,* 671 F.2d 1268, 1271 (10th Cir.1982), states that

> [e]xercising reasonable care under "all the circumstances" is still the standard, but greater care is required because the nature of the business is ultrahazardous.

At 762. When the court states that *greater* care is required when an ultrahazardous activity is involved, that is an accurate statement. But the court is then incorrect in holding that although greater care is required, the jury must not be told of it. I would hold that the jury be so instructed, and I would approve such instruction.

The majority opinion states plainly, however, that it does not approve of an instruction informing the jury that "greater care is required" when an ultrahazardous activity is involved. Therefore, henceforth, an injured person should be prepared to produce evidence for the jury of the dangerousness of the activity, the accident frequency, statistical information totalling and describing the nature and magnitude of injuries, the likelihood of death, safety precautions available, safety training and programs, safety devices, and expert testimony upon all these elements and the ultrahazardous nature of the activity so that the jury can identify and apply the proper greater standard of care required "under *all* of the circumstances."

Further, I disagree with that part of the majority opinion which states that Wyoming common law recognizes only one standard of care in negligence actions, regardless of the dangerousness of the instrumentality involved. The majority states, I believe incorrectly, that "we * * * have consistently stated ever since [*Pan Am. Petroleum Corp. v. Like,* 381 P.2d 70 (Wyo.1963) ], the standard of care is ordinary care under *all* of the circumstances." At 762. This court, in *Pan Am.,* at 73–74, stated in pertinent part the following:

> Counsel for the oil company have insisted that the standard of care, against which the acts of defendant-company should be measured, is that which on the average is exercised in the industry. The case of *Citizens Coach Company v. Collier,* 233 Ark. 912, 348 S.W.2d 873, and other au-

thorities are cited. For the most part, however, the cases cited have to do with businesses which involve very little risk as compared to the ultrahazardous activity involved in the instant case. The difference, we think, will become apparent from our subsequent discussion.

\*　　\*　　\*　　\*　　\*　　\*

Attorneys for Pan American admit in their brief that the drilling and completion of an oil well "is always a hazardous undertaking," and that serious accidents can and do occur. \* \* \*

\*　　\*　　\*　　\*　　\*　　\*

A higher degree of care is required in dealing with a dangerous agency than in the ordinary affairs of life or business which involve little or no risk. This care is sometimes described as a high degree of care, or a very high degree of care, or in some instances as the utmost care or extreme care.

\*　　\*　　\*　　\*　　\*　　\*

While no absolute standard of duty in dealing with dangerous agencies can be prescribed, it is safe to say in general terms that every reasonable precaution suggested by experience and the known dangers of the subject ought to be taken.

The sum of all of the above is that the *Pan American* court acknowledged the activity as extrahazardous, and, although its statement of law is less than clear, the preponderance of what is stated and a fair summary is that "a higher degree of care is required in dealing with a dangerous agency than in the ordinary affairs of life," and that the jury should be so informed.

In *Case v. Goss,* 776 P.2d 188 (Wyo.1989), an injured employee sued several coemployees for culpable negligence. The trial court granted each of the coemployee defendants summary judgment. On appeal to this court, we reversed summary judgment, finding that genuine issues of material fact existed concerning the question of culpable negligence of several of the coemployee defendants. *Id.* at 197–98. In the process of determining that material questions of fact existed, we discussed the duty of care owed by these

coemployees. Justice Golden, writing for the majority, stated:

> In this case, the outer boundary of this delegated duty is defined by the additional factor that mining is considered an extrahazardous activity in Wyoming, W.S. 27–12–106 (1977), involving the use of dangerous agencies. ***Persons knowingly dealing with a dangerous agency must exercise the care commensurate with the danger involved. Pan American Petroleum Corporation v. Like, 381 P.2d 70, 74 (Wyo.1963). As such, the degree of care of those entrusted with the duty to provide a safe workplace is greater than under the ordinary circumstances of life or business where little or no risk is involved. This standard of care requires that every reasonable precaution suggested by experience and the known dangers of the subject ought to be taken.*** [emphasis added]

*Case,* 776 P.2d at 192.

Clearly, this court has applied a higher standard of care to those dealing with extrahazardous instrumentalities, and so instructing lay jurors has long been an established practice in the state. If a majority of this court desires to overrule what I consider precedent, it may do so; but it should acknowledge that it is overruling precedent.

I concur in the majority opinion in this case because I believe that appellee was not entitled to an instruction on the higher standard of care for extrahazardous instrumentalities because the accident involved low voltage wires which are not extrahazardous instrumentalities.