EDWIN H. UPDIKE and Others, as Trustees in Bankruptcy of H. L. STRATTON, INC., Appellants, Respondents, *v.* OAKLAND MOTOR CAR COMPANY, Respondent, Appellant.*

First Department, May 29, 1930.

---

* Revg. 134 Misc. 234.

*David Haar* of counsel [*Jonas & Neuburger*, attorneys], for the plaintiffs.

*Albert M. Levert* of counsel [*Anthony J. Russo* with him on the brief; *John Thomas Smith*, attorney], for the defendant.

FINCH, J. Both parties appeal from a determination of the Appellate Term which modified a judgment of the City Court in favor of the plaintiffs by reducing the judgment to one-third of the amount awarded, namely, from a sum representing a contribution to rent for the month of January, 1927, to a sum representing a proportionate part of this rental for ten days.

Two questions are presented for review: *First*, whether the defendant is liable under a written contract between the parties for a monthly contribution of rent payable on January 1, 1927; and *second*, if liable, whether the amount is apportionable.

The facts are not in dispute. They are as follows: On November 3, 1924, the bankrupt and the defendant entered into an agreement for three years, to take effect December 1, 1924, with renewal periods unless canceled in the manner therein provided. The defendant is a manufacturer of automobiles, parts and accessories. Under the contract it was agreed that the bankrupt should act as the exclusive dealer for the product of the defendant in a designated territory, with a discount from the list prices to the dealer.

634

The dealer accepted the exclusive rights to sell in said territory "upon the terms and provisions of this agreement" and entered into the agreement "in consideration of the premises, mutual covenants and conditions hereinafter set forth." The particular covenants and conditions of the contract upon which this claim is based read as follows: "The seller agrees to pay to the direct dealer toward the rent of the direct dealer's quarters now located at the northeast corner of Broadway and Fifty-seventh Street, New York City, or any other quarters that may be mutually satisfactory to the parties hereto, the sum of twenty-five thousand dollars ($25,000) per year in equal monthly installments of two thousand eighty three and 33/100 ($2,083.33) dollars for a period of four (4) years, beginning with December 1, 1924.

"If this agreement is terminated for cause by the seller before August 1, 1927, or in any renewal period, the said payment shall cease upon the said termination, but if this agreement is terminated by the seller without cause before August 1, 1927, or in any renewal period, or the seller gives to the direct dealer the notice (provided for in Article Twenty-second hereof), that it will not renew this agreement beyond August 1, 1927, then upon the said termination or on August 1, 1927, as the case may be, seller agrees to, nevertheless, pay to the direct dealer a sum equal to the difference between the aggregate amount then already paid by seller to direct dealer under this clause Fourth and the sum of One hundred thousand dollars ($100,000)."

It is conceded that the defendant made a contribution of $2,083.33 monthly toward the rent of the dealer up to and including December 30, 1926, pursuant to the terms of the agreement. On December 30, 1926, the dealer filed a voluntary petition in bankruptcy and receivers were appointed. Article 19 of the agreement provides that in the event of bankruptcy of the dealer or the appointment of a receiver and the continuation of the receivership for ten days after appointment, the defendant is permitted at its option to cancel the agreement upon ten days' written notice to the dealer. On December 31, 1926, the defendant sent a notice to the bankrupt and the receivers of its election to terminate the agreement, effective ten days thereafter, pursuant to the article of the agreement giving the right to terminate in the case of bankruptcy or the appointment of a receiver. The defendant did not make the January payment of $2,083.33. The receivers in bankruptcy having in the usual course become trustees in bankruptcy, they brought this action to recover this amount of $2,083.33, which they claim was payable absolutely on January 1, 1927. There is no allegation in the complaint that the receivers at any time subsequent to the filing

of the bankruptcy petition assumed any part of the agreement or that they applied for or obtained authority to adopt it. Nor is there any allegation in the complaint that they performed any of the provisions of the agreement upon their part. The complaint attempts to spell out a cause of action on the bare allegation of the bankruptcy of the dealer and the appointment of receivers and the demand for payment of the $2,083.33, which they allege became due on January 1, 1927.

The main question in the case which goes to the heart of the controversy and overshadows all subsidiary and technical objections is whether the covenant in question to contribute to rent constitutes an independent covenant or one dependent upon the continued fulfillment of the other covenants of the agreement. This question must rest upon the intention of the parties as expressed in the agreement. (*Rosenthal Paper Co.* v. *National Folding B. & P. Co.*, 226 N. Y. 313, 320.) An important consideration is the provision of the contract appearing at the beginning of the instrument that the covenants and conditions were mutual and provided respective consideration each for the other. Such language in itself goes far towards demonstrating that the covenant in question was not intended to be independent, but dependent upon the carrying out of the other provisions of the contract. In addition, an obligation to pay rent presupposes a going concern. A voluntary petition by the bankrupt admitting its insolvency and praying that its affairs be wound up and its assets distributed *pro rata* among its creditors, admits its complete disablement to perform the agreement which was the fundamental basis of the business of the dealer. Such incapacity when caused by bankruptcy and a receivership, especially if voluntary, constitutes a breach of the agreement which excuses the other party from further performance, at least in the absence of proof that the receivers were authorized by the court to, and did, approve and adopt the contract and undertake its performance. (*Hanna* v. *Florence Iron Company*, 222 N. Y. 290; *Central Trust Co.* v. *Chicago Auditorium*, 240 U. S. 581; *Wood* v. *Fisk*, 156 App. Div. 497; affd., 215 N. Y. 233.) In *Central Trust Co.* v. *Chicago Auditorium* (240 U. S. 581) the court said: " In short, it must be deemed an implied term of every contract that the promisor will not permit himself, through insolvency or acts of bankruptcy, to be disabled from making performance; and, in this view, bankruptcy proceedings are but the natural and legal consequence of something done or omitted to be done by the bankrupt, in violation of his engagement."

Having regard to the agreement as a whole and particularly to that part where the parties expressly provided that the covenants

and conditions should be mutual, it follows that the covenants are not independent but dependent. When to the foregoing is added the principle of law that the bankruptcy of one party breaches the implied term of the contract that the promisor, through insolvency or acts of bankruptcy, shall not disable himself from making performance, it results in the conclusion that the bankrupt has breached the agreement upon his part, and thereby absolved the defendant from further performance upon its part.

We now come to a consideration of whether the notice given by the defendant that it elected to exercise its option to cancel the agreement upon ten days' written notice to the dealer because of the bankruptcy of the dealer, can be construed not only as a notice of cancellation but as keeping alive the agreement for the period of ten days and rendering the defendant liable for rent for the whole of the month of January, or that portion of the month until the notice took effect. This notice by its terms sought to cancel any remaining rights which the dealer might exercise under the agreement. The giving of such a notice cannot be construed as creating an obligation on the part of the defendant to make an affirmative payment, or as reviving an obligation which had already been lost by the failure to perform on the part of the dealer. A mere statement of the question makes clear the negative answer. Certainly the defendant, in sending a notice designed to prevent a bankrupt dealer from any longer making a claim to represent it, cannot be thereby held to indicate an intention to revive an obligation from which it had been absolved. At the very most, the claim might be made that the result of the notice might place in abeyance the obligation of the defendant to perform affirmative covenants on its part pending the emergence from bankruptcy of the dealer.

The covenant to make contribution towards rent being a dependent covenant, and the notice given pursuant to the option to terminate all claim under the agreement because of the bankruptcy and the appointment of receivers not being construable as continuing the obligation to pay rent pending the taking effect of the notice where such obligation had already ceased under the contract, it follows that the determination of the Appellate Term and the judgment of the City Court should be reversed, the complaint dismissed, and judgment absolute rendered in favor of the defendant, with costs to the defendant in all courts.

DOWLING, P. J., MERRELL, McAVOY and SHERMAN, JJ., concur.

Determination appealed from and judgment of the City Court reversed, the complaint dismissed, and judgment absolute rendered in favor of the defendant, with costs to the defendant in all courts.