■ In the Matter of LONG ISLAND LIGHTING COMPANY, Respondent, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent, and MAYFLOWER ENERGY PARTNERS, L.P., a Limited Partnership, Appellant. [606 NYS2d 406] —White, J. Appeal from a judgment of the Supreme Court (Travers, J.), entered May 14, 1992 in Albany County, which granted petitioner's application, in a proceeding pursuant to CPLR article 78, to annul a determination of respondent Public Service Commission directing petitioner to enter into a power sales contract with respondent Mayflower Energy Partners, L.P.

Respondent Mayflower Energy Partners, L.P. (hereinafter Mayflower) is proposing to build a cogeneration facility at the site of Pilgrim State Psychiatric Hospital in the Town of Islip, Suffolk County. While a small portion of the facility's electric output will be provided to Pilgrim State Hospital, the majority will be sold to petitioner. This matter is governed by the Federal Public Utility Regulatory Policies Act[1] which requires public utility companies to purchase electricity from qualifying cogeneration facilities (hereinafter QFs) (see, 16 USC § 824a-3). Respondent Public Service Commission (hereinafter the PSC)[2] is charged with overseeing the contracting process and is statutorily bound to ensure that the amounts paid under such contracts are "just and reasonable" to the utilities' ratepayers and are in the public interest (16 USC § 824a-3 [b] [1]; 18 CFR 292.304 [a] [1] [i]).

The price a utility pays for QF energy can be based on the utility's avoided cost[3] calculated at the time of delivery or at the time a legally enforceable obligation is incurred (18 CFR 292.304 [d]). To assist utilities and QFs in negotiating power

---

1. Due to the fact the Pilgrim Facility's maximum electrical output will exceed 80 megawatts, it is not subject to the terms of Public Service Law § 66-c.

2. The PSC has withdrawn its appeal.

3. Avoided costs are those costs a utility would incur to produce the energy itself had it not purchased the energy from a QF.

purchase contracts, the PSC has generated a series of "long run avoided costs schedules" (hereinafter LRACS) for use in determining appropriate purchase prices for long term contracts.

When the parties commenced their negotiations on a contract in February 1990, the 1989 LRACS were in effect. However, before they were prepared to enter into a contract, the PSC, on November 20, 1990, issued an order establishing the 1990 LRACS that were, in some instances, over 20% lower than the 1989 LRACS. At this point, the parties' negotiations stalled as they could not agree on whether the 1989 or 1990 LRACS should be utilized.

Subsequently, on February 19, 1991, Mayflower petitioned the PSC for a ruling that it was entitled to use the 1989 LRACS. A few days later, the PSC issued a ruling that utilities should allow developers to conclude negotiations based on an existing LRACS that had been replaced if (1) the developer's project design and contract language proposals were concrete and complete and (2) a contract could be executed within six months of the date the new LRACS were issued (see, Public Serv Commn Opinion and Order No. 91-2 [Feb. 25, 1991]) (hereinafter Opinion 91-2). To aid utilities in making such determination, the PSC referred them in Opinion 91-2 to a test set out in its earlier determination concerning Falcon Seaboard Oil Company.

Faced with a six-month deadline, Mayflower petitioned the PSC on March 27, 1991 for an order specifically requiring petitioner to agree to rates based on the 1989 LRACS. In a declaratory ruling issued on May 15, 1991, the PSC held, *inter alia,* that Mayflower had met the criteria set out in the Falcon Seaboard case and that petitioner must sign a contract utilizing the 1989 LRACS within 30 days.

Petitioner refused to sign the contract. Mayflower then petitioned the PSC for an order directing it to do so. At the same time, petitioner filed a petition for a rehearing of the May 15, 1991 declaratory ruling. Although the PSC issued an order on September 18, 1991 withdrawing the 1990 LRACS as being seriously overstated, it upheld its May 15, 1991 declaratory ruling in an order issued on September 30, 1991. Petitioner then signed the Mayflower contract under protest on October 29, 1991.

Petitioner commenced this CPLR article 78 proceeding on December 30, 1991 seeking a judgment annulling that part of the PSC's September 30, 1991 determination which directed it

to enter into a contract with Mayflower utilizing the 1989 LRACS. Supreme Court granted the petition on the ground that the use of the 1989 LRACS was arbitrary and capricious.

Petitioner contends that our decision in *Matter of Xiox Corp. v Public Serv. Commn.* (190 AD2d 350, *appeal dismissed, lv denied* 82 NY2d 790) is dispositive of this appeal. There, we held that the PSC acted within its discretion in deciding that a QF was not entitled to a contract based upon the 1990 LRACS given its finding that they were substantially overstated, coupled with its overarching duty to ensure that power purchase contracts meet the statutory requirement that rates be "just and reasonable" to ratepayers *(supra,* at 355).

Facially, this case is distinguishable in that the 1989 LRACS were not withdrawn but were superseded by the 1990 LRACS. Nevertheless, upon close examination, this case is similar to *Matter of Xiox Corp. (supra).* In its original order establishing the 1990 LRACS, the PSC acknowledged that the 1989 LRACS were inflated due to its invalid assumption that additional generating capacity would be needed by 1992. As a result, due to decreased capitalization costs, the 1990 LRACS were substantially lower than the 1989 ones. As noted, even these proved to be substantially overstated and were withdrawn on September 18, 1991. Thus, it is evident that at the time the PSC issued its September 30, 1991 order in this case, the PSC knew that the 1989 LRACS were inflated. Therefore, because their use would result in a substantial overcharge to petitioner's ratepayers, and as Opinion 91-2 imposes no obligation upon the PSC to acquiesce in or to compel the execution of a contract whose rates are not "just and economically reasonable" to the ratepayer *(supra,* at 354), we agree with Supreme Court that the PSC abused its discretion in this instance. Accordingly, we affirm.

This disposition makes it unnecessary for us to address Mayflower's assertion that petitioner's challenge to the PSC's use of the Falcon Seaboard criteria is untimely.

Weiss, P. J., Mercure, Mahoney and Casey, JJ., concur. Ordered that the judgment is affirmed, without costs.