[621 NYS2d 237]

PHILADELPHIA CORPORATION et al., Respondents-Appellants, v
NIAGARA MOHAWK POWER CORPORATION, Appellant-Re-
spondent.

Third Department, January 19, 1995

### APPEARANCES OF COUNSEL

*Hiscock & Barclay,* Albany *(Timothy P. Sheehan* of counsel), and *Brian K. Billinson,* Syracuse, for appellant-respondent.

*Dewey Ballantine,* New York City *(Wayne A. Cross* and *Laura K. Brecher* of counsel), and *Couch, White, Brenner, Howard & Feigenbaum,* Albany *(Paul A. Feigenbaum* and *Leonard H. Singer* of counsel), for respondents-appellants.

### OPINION OF THE COURT

CARDONA, P. J.

Plaintiffs are the owners of hydroelectric generating facilities which sell their electricity to defendant, a public utility, pursuant to contract and the requirements of the Federal Public Utility Regulatory Policies Act (16 USC § 824a-3) and Public Service Law § 66-c. At issue are 20 output contracts, 17

of which define the electricity to be sold in terms of approximate capacity and approximate annual production.[1]

In 1992, defendant sought to clarify the maximum amount of electricity it was bound to purchase under the contracts and informed plaintiffs of its interpretation of its contractual obligations and what it would pay for plaintiffs' excess electricity. Plaintiffs, taking the position that defendant was contractually obligated to purchase their entire output, commenced this action for breach of contract and for a declaratory ruling on the contract terms. Defendant moved to dismiss on grounds not subject to this appeal, and plaintiffs cross-moved for summary judgment. In reply defendant requested, *inter alia,* that the court treat its motion to dismiss as one for summary judgment pursuant to CPLR 3211 (c). Supreme Court denied all motions. Defendant appeals and plaintiffs cross-appeal.

Obligations arising under an output contract are subject to good faith and commercial standards of fair dealing (see, UCC 2-306; *Feld v Levy & Sons,* 37 NY2d 466, 469-470; *Wigand v Bachmann-Bechtel Brewing Co.,* 222 NY 272, 277; *see also, Gestetner Corp. v Case Equip. Co.,* 815 F2d 806, 811), as the seller's discretion in controlling output also controls the purchaser's obligation to buy. Here, the output seller's commercial good faith must be subjected to particular scrutiny because defendant's obligation to enter into the contracts was not voluntarily assumed but imposed by law *(see, Matter of Xiox Corp. v Public Serv. Commn.,* 190 AD2d 350, *appeal dismissed, lv denied* 82 NY2d 790; *see also, Snow Mtn. Pine Co. v Maudlin,* 84 Ore App 590, 734 P2d 1366, *review denied* 303 Ore 591, 739 P2d 571.

Within this context, the contracts are unambiguous and may be interpreted by the court *(see, Hartford Acc. & Indem. Co. v Wesolowski,* 33 NY2d 169, 172). For the 17 contracts with stated estimates, defendant is obligated to purchase and plaintiffs are obligated to sell electricity in such quantities which are not unreasonably disproportionate to the stated estimates within the contracts *(see,* Restatement [Second] of

---

1. The remaining three contracts, also output contracts, do not contain estimates. One contract is with Potsdam Power Corporation, which operates two hydroelectric generating facilities on the Racquette River at Unionville and Hewittville. The other two contracts are with Long Lake Energy Corporation and involve its facilities at Harrisville and Dolgeville. A stipulation between the parties states that the correspondence of defendant which began the controversy did not apply to these facilities.

Contracts § 77, at 197; *see also,* UCC 2-306 [1]). While the estimates are not absolute maximum quantities beyond which the contracts do not apply, as defendant contends, neither may plaintiffs modify their outputs beyond the normal range commercially consistent with the capacity estimates used in the contracts, as they contend *(see, Matter of Indeck-Yerkes Energy Servs. v Public Serv. Commn.,* 164 AD2d 618). Plaintiffs may not under the contracts increase their electrical output beyond the reasonable expectations of the parties as quantified by the stated estimates[2] *(see, Orange & Rockland Utils. v Amerada Hess Corp.,* 59 AD2d 110, 116). Plaintiffs and defendant are entitled to this extent to partial summary judgment declaring this interpretation of the 17 contracts.

Both plaintiffs and defendant represent to the court that the approximate capacity and annual production figures for the hydroelectric plants can be accurately computed and it is standard practice within the industry to use such figures. However, the normal range of variance for the respective generating facilities has not been set forth in the record. Similarly, plaintiffs' production figures and their relationship to the range of variance, which is naturally implied by the use of production estimates, have not been addressed, nor have the parties' past practices under the agreements been detailed *(see, Sinkwich v Drew & Co.,* 9 AD2d 42, 46). The issue of plaintiffs' good faith relative to their excess production remains unexplored. The record fails to identify which facilities are actually impacted by the series of letters sent by defendant and the specific nature of this impact. Accordingly, issues of fact remain unresolvable on this record as to the parties' conduct regarding each of the 17 contracts.

While defendant's correspondence is admittedly inapplicable to the three remaining contracts, the complaint alleges a breach of contract and plaintiffs continue to seek a declaration concerning their interpretation. The three contracts without stated estimates are limited to normal or otherwise comparable prior output and no quantities unreasonably disproportionate to such prior output may be tendered *(see,* UCC 2-306; *Feld v Levy & Sons, supra).* Again, the specifics of the parties'

2. Plaintiffs acknowledge that the estimates are for defendant's protection, but without any basis seek to limit the nature of the protection. The need for accurate estimates becomes apparent in light of the Public Service Commission's role *(see, Matter of Indeck-Yerkes Energy Servs. v Public Serv. Commn.,* 164 AD2d 618, *supra)* and the need to plan the supply of electricity *(see,* Public Serv Commn Declaratory Ruling No. 91-E-0976 [Feb. 27, 1992]).

conduct is totally lacking, and accordingly the parties are limited to only partial summary judgment declaring the interpretation of the contracts.

■ Finally, the complaint alleges the effectiveness of an amendment to the contract concerning the New York State Dam on the Mohawk River between Albany and Saratoga Counties. Plaintiffs have not contested defendant's evidentiary showing that the proposed amendment was never fully executed or filed with the Public Service Commission. Accordingly, defendant is entitled to partial summary judgment dismissing the complaint to the extent that it seeks relief relative to the proposed third amendment *(see, Zuckerman v City of New York,* 49 NY2d 557).

MERCURE, WHITE, CASEY and PETERS, JJ., concur.

Ordered that the order is modified, on the law, without costs, by (1) granting the parties partial summary judgment declaring that, in those output contracts with stated estimates, plaintiffs are required to sell and defendant is required to purchase such quantities of electricity as are, in good faith and in compliance with standards of commercial fair dealing, reasonably proportionate and commercially consistent with such estimates, and that, in those output contracts without stated estimates, plaintiffs are required to sell and defendant is required to purchase such quantities of electricity as are, in good faith and within the standards of commercial fair dealing, reasonably proportionate and commercially consistent with normal or otherwise comparable prior quantities, and (2) dismissing the complaint as to the proposed third amendment to the contract concerning the New York State Dam on the Mohawk River, and, as so modified, affirmed.