**ENCOGEN FOUR PARTNERS, L.P., Plaintiff,**

**v.**

**NIAGARA MOHAWK POWER CORPORATION, Defendant.**

**NORCON POWER PARTNERS, L.P., Plaintiff,**

**v.**

**NIAGARA MOHAWK POWER CORPORATION, Defendant.**

Nos. 94 Civ. 1497 (JES), 94 Civ. 1530 (JES).

United States District Court, S.D. New York.

Feb. 6, 1996.

King and Spalding (Laurence V. Senn, Jr., of counsel), New York City, for Plaintiff Encogen Four Partners, L.P.

Chadbourne & Parke (Thomas J. Hall, Brian A. Miller, of counsel), New York City, for Plaintiff NorCon Power Partners, L.P.

Lankenau Kovner & Kurtz (Laura R. Handman, of counsel), New York City, for Defendant Niagara Mohawk Power Corp.

Swidler & Berlin, Chartered (Timothy A. Ngau, of counsel), Washington, DC, for Defendant Niagara Mohawk Power Corp.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge:

Plaintiffs Encogen Four Partners, L.P. ("Encogen") and NorCon Power Partners, L.P. ("NorCon") bring the instant related actions against Niagara Mohawk Power Corporation ("Niagara Mohawk"), each claiming breach of contract for the sale of electricity. In each action, Niagara Mohawk counterclaims against plaintiffs, seeking a declaratory judgment that New York law provides a right to demand adequate assurances of future performance. Pursuant to Federal Rule of Civil Procedure 12(c), Encogen moves for judgment on the pleadings dismissing Niagara Mohawk's counterclaim. Pursuant to Federal Rule of Civil Procedure 56, NorCon moves for summary judgment. For the reasons that follow, Encogen's motion for judgment on the pleadings is granted, and NorCon's motion for summary judgment is granted in part and denied in part.

## BACKGROUND

Congress enacted the Public Utility Regulatory Policies Act of 1978 ("PURPA"), 16 U.S.C.A. §§ 796 and 824a–3 *et seq.*, to encourage the development of qualified cogeneration facilities by independent power producers.[1] 16 U.S.C.A. § 824a–3. Under PURPA, the Federal Energy Regulatory Commission ("FERC") is empowered to establish rules regulating state public utilities and cogeneration facilities. Pursuant to its statutory mandate, the FERC enacted regulations requiring an electric utility to purchase "any energy and capacity which is made available from a qualifying [cogeneration] facility...." 18 C.F.R. § 292.303(a) (1993).

These regulations also require that the price a cogeneration facility may charge the utility for its electricity be "just and reasonable to the electric consumer of the electric utility and in the public interest." 18 C.F.R. § 292.304. The FERC regulations also direct the utility regulatory authorities of each state to promulgate rules governing the pricing provisions of contracts between cogeneration facilities and utilities. 18 C.F.R. § 292.401. Pursuant to PURPA, the New York State legislature enacted New York Public Service Law ("PSL") § 66–c, which provides that the New York Public Service Commission ("PSC") shall require New York utilities to enter into long-term contracts for the purchase of electricity from alternative energy sources, including cogeneration facilities. PSL § 66–c. Furthermore, Section 66–c grants the PSC authority to oversee the contracting process and set the prices for long-term power contracts. *Id.*

Encogen, a Delaware limited partnership, owns, leases and operates an electric cogeneration facility in the State of New York. First Amended Complaint ("First Am. Comp.") ¶ 2. Niagara Mohawk is a private, investor-owned New York utility corporation. First Am.Comp. ¶ 3; Encogen's Memo in Support ("Enc.Mem.Sppt.") at 2. Regulated by the PSC, Niagara Mohawk provides electric and gas power throughout a large portion of upstate New York. First.Am.Comp. ¶ 3; Enc.Mem.Sppt. at 2. On or about February 18, 1988, Niagara Mohawk and American Brass Company, Encogen's predecessor in interest, entered into a power purchase agreement (the "Encogen Agreement")

---

1. Cogeneration is the production of two or more useful forms of energy, such as electricity and steam, from a single primary fuel source. N.Y.Pub.Serv.Law § 2.2(a) (Supp.1992).

whereby American Brass Company[2] would own and operate an approximately 62 megawatt gas fired cogeneration facility (the "Encogen facility") in Buffalo, New York.[3] First Am.Comp. ¶ 14. As statutorily required, Niagara Mohawk agreed to purchase all electricity generated by the Encogen facility.[4]

The Encogen Agreement creates a pricing formula for the purchase of electricity generated by the Encogen facility during a twenty-five year term commencing May 1, 1992. *Id.* ¶¶ 20, 16. This formula specifies that Niagara Mohawk's purchase price under the Encogen Agreement shall be equal to or below Niagara Mohawk's "avoided cost." Answer and Counterclaim to First Am.Comp. ("Ans.") ¶ 2. The avoided cost reflects the cost of either generating the electricity itself or purchasing it from another source. *Id.*

The Encogen Agreement creates three pricing periods over the twenty-five year term. First Am.Comp. ¶ 21. During the first period, which lasts until the balance in an "adjustment account" reaches zero, Niagara Mohawk is to pay Encogen rates that equal the avoided costs calculated at the date of the Encogen Agreement. *Id.* The second pricing period lasts fifteen years until March 6, 2007. *Id.* ¶ 22. The third pricing period begins thereafter and ends on March 6, 2017. *Id.* ¶ 23. During the second and third periods, Niagara Mohawk is to pay Encogen rates based on avoided costs calculated at the time of delivery. Ans. ¶ 19.

Because these fixed rates could deviate from Niagara Mohawk's avoided cost, the Encogen Agreement creates an adjustment account. First Am.Comp. ¶ 21. The difference between payment at the contract rates and payment at Niagara Mohawk's avoided cost is accumulated in the adjustment account with interest at contractually specified rates. *Id.* During the second and third pricing periods, Encogen must repay the accumulated adjustment account balance by selling electricity at a discount from Niagara Mohawk's avoided cost to make cash payments from the proceeds. *Id.* ¶ 22, 23. At the time of contracting, all parties recognized that, due to any number of variables, the balance in the adjustment account over the duration of the Encogen Agreement could fluctuate. *Id.* ¶ 25; Ans. ¶ 35. To secure this risk, the parties negotiated and agreed to a provision in the Encogen Agreement granting Niagara Mohawk a security interest in the Encogen Facility to secure Encogen's performance and any balance in the adjustment account remaining at the end of the third period.[5]

At the time the parties entered into the Encogen Agreement, the PSC Power Division estimated that the adjustment account balance would be approximately $16.5 million after the third year of operation. Ans. ¶ 6. The Power Division also predicted at the time of contracting that Encogen would repay this amount in full before the end of the sixth contractual year. *Id.* However, independent consultants hired by Niagara subsequent to contracting, using the same type of analysis employed by the PSC's Power Division, projected that Encogen will accumulate an adjustment account of nearly $330 million before repayment is scheduled to begin. *Id.* ¶ 7.

In December 1993 and January 1994, Encogen supplied Niagara with all the electricity produced at the facility, in accordance with the Encogen Agreement. First Am.Comp. ¶ 33. Niagara Mohawk made payments towards the amount due. *Id.* However, these payments were substantially below those it is alleged to have owed under the Encogen Agreement. *Id.*

---

**2.** On February 28, 1989, American Brass Company assigned all of its rights under the Encogen Agreement to EDC Four, Inc. First Amend. Comp. at ¶ 14. On January 7, 1991, EDC Four, Inc. assigned all of its rights and obligations under the Encogen Agreement to Encogen. *Id.*

**3.** The Encogen facility is a "qualifying facility" as defined by PURPA and a "cogeneration facility" as defined by New York PSL § 2.2(a).

**4.** However, Niagara Mohawk contends that the contractual term "Electricity" is limited herein to an annual production of 488,000 megawatt hours. Ans. ¶¶ 28, 29.

**5.** The Encogen Agreement provides that "Niagara's exclusive remedy for [Encogen's] failure to pay the balance of the Adjustment Account is to foreclose its lien upon the [Encogen] plant." Encogen Agreement ¶ 9.

By letter dated February 4, 1994, Niagara Mohawk communicated its refusal to perform its obligations under the Encogen Agreement unless it receives adequate assurances of Encogen's ability to perform its repayment obligations under the Encogen Agreement. First Am.Comp., Exh. B. *Id.*, ¶ 37–38. Niagara Mohawk also asserts that the electricity delivered by Encogen was in excess of that which it had agreed to purchase under the Encogen Agreement. Ans. ¶ 43. Therefore, Niagara claims it is not contractually obligated to purchase the electricity at the contract rate. *Id.*

By letter dated March 4, 1994, Encogen responded that it intended to continue to perform its obligations pursuant to the terms of the Encogen Agreement. Ans. ¶ 55; First Am.Comp. ¶ 45. Encogen filed the instant action for breach of contract seeking damages in an amount in excess of $1.075 million plus interest and punitive damages. Encogen also seeks a declaratory judgment that 1) Niagara has no grounds for reasonable insecurity as to Encogen's ability to perform its obligations under the Encogen Agreement, First Am.Comp. ¶ 53, 2) Niagara has no right to demand adequate assurances of its future performances from Encogen, *id.*, 3) the assurances sought are unreasonable, *id.*, and 4) Niagara does not have the right to terminate the Encogen Agreement. *Id.*

On April 4, 1994, Niagara Mohawk filed an answer and counterclaim seeking a declaratory judgment that 1) Niagara Mohawk is reasonably insecure with respect to Encogen's future performance of its obligations under the Encogen Agreement, Ans. ¶ 67, 2) Niagara Mohawk properly exercised its right to demand such adequate assurances in the February 1994 letter to Encogen, *id.*, 3) Encogen's March 1994 letter fails to provide adequate assurances of its future performance, *id.*, 4) Encogen's failure to provide adequate assurances of its future performance constitutes a repudiation of the Encogen Agreement, *id.*, and 5) by reason of Encogen's repudiation, Niagara Mohawk is entitled to cease its performance under the Encogen Agreement.[6] *Id.*

Pursuant to Fed.R.Civ.P. 12(c), Encogen moves for judgment on the pleadings dismissing Niagara Mohawk's counterclaim, which seeks declaratory judgment that Niagara Mohawk has the right to demand adequate assurances of Encogen's ability to perform the contract. Pursuant to Fed.R.Civ.P. 56, NorCon moves for summary judgment on the ground, *inter alia,* that Niagara Mohawk has no right to demand, and Encogen has no obligation to provide, additional assurances of performance.[7]

## DISCUSSION

In its principal argument, Niagara Mohawk claims that New York common law provides it the right to demand adequate assurances of Encogen's ability to perform its contractual obligations.[8] However, no

---

6. NorCon, a Delaware limited partnership, is an independent power producer which owns and operates a 79.3 megawatt cogeneration facility in Erie County Pennsylvania. Affidavit of Thomas J. Hall sworn to November 2, 1994 ("Hall Aff.") ¶ 7. NorCon brings the instant related action arising out of a power purchase agreement between NorCon and Niagara Mohawk dated April 29, 1989 (the "NorCon Agreement"). Verified Complaint dated March 7, 1994 ¶ 1. By letter dated February 4, 1994, Niagara Mohawk advised NorCon that, unless NorCon provided adequate assurances that it would perform under the NorCon Agreement, Niagara Mohawk would repudiate the NorCon Agreement and terminate its own performance. Hall Aff. ¶¶ 81–82.

 The instant issue initially came before this Court on Encogen's motion for judgment on the pleadings in *Encogen v. Niagara Mohawk,* 94 Civ. 1497 (JES). However, NorCon and Niagara Mohawk Power have stipulated to be bound in the instant related action *NorCon v. Niagara Mohawk,* 94 Civ. 1530 (JES) by this Court's decision on the issue of Niagara Mohawk's right to demand adequate assurances of future performance. Stipulation dated November 15, 1995.

7. Because NorCon and Niagara Mohawk have agreed to be bound by the instant decision only on the issue of Niagara Mohawk's right to demand adequate assurances, *see* n. 6, *supra,* the Court will at this time consider only NorCon's motion for summary judgment on that issue. Therefore, the Court will deny the remainder of NorCon's motion for summary judgment without prejudice to being renewed at a later time.

8. Given the nature of this action, the Court concludes that New York common law, rather than federal common law, governs the instant action. *See O'Melveny & Myers v. F.D.I.C.,* —— U.S. ——, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994).

such right exists under New York common law. *See Schenectady Steel Co. v. Bruno Trimpoli Gen. Constr. Co.,* 43 A.D.2d 234, 236, 350 N.Y.S.2d 920 (3d Dep't), *aff'd,* 34 N.Y.2d 939, 359 N.Y.S.2d 560, 316 N.E.2d 875 (1974) ("at common law no such duty to provide adequate assurances existed") (citing 2 Anderson U.C.C. [2d ed.] § 2–609:3), *aff'd* on other grounds, 34 N.Y.2d 939, 359 N.Y.S.2d 560, 316 N.E.2d 875 (1974); *Elliott Assoc. v. Bio–Response, Inc.,* 1989 WL 55070, *3–4, 1989 Del.Ch. LEXIS 63, *7–9 (May 23, 1989), *aff'd,* 1989 WL 72028, at *1, C.A. No. 10,624, 1989 Del.Ch. LEXIS 73, at *2–3 (June 21, 1989) (same) (applying New York law); CALAMARI & PERILLO, THE LAW OF CONTRACTS, § 12–2 at 518 (3d ed. 1987) ("U.C.C. § 2–609 introduced into the law the notion that where a party to a contract is guilty of serious prospective inability or unwillingness to perform, the other may make a demand for 'adequate assurances of due performance.' There was no such common law procedure."). Indeed, New York courts have strictly adhered to the common law rule, absent one narrowly defined circumstance, not applicable to this case.[9]

■ Niagara Mohawk also argues that section 2–609 of the Uniform Commercial Code ("U.C.C.") provides the right to demand adequate assurances of future performance.[10] Under New York law, however, the sale of electricity does not constitute a

sale of goods, but a service. *See United States v. Consol. Ed., Inc.,* 590 F.Supp. 266, 269 (S.D.N.Y.1984); *Bowen v. Niagara Mohawk Power Corp.,* 183 A.D.2d 293, 590 N.Y.S.2d 628, 631 (4th Dep't.1992) ("the provision of electricity is a service, not the sale of a product"); *Farina v. Niagara Mohawk Power Corp.,* 81 A.D.2d 700, 701, 438 N.Y.S.2d 645 (3d Dep't.1981) (same). Thus, the U.C.C. does not govern contracts, such as the Encogen Agreement, involving the sale of electricity. *See Consol. Ed.,* 590 F.Supp. at 269 ("[i]n New York, electricity is not considered 'goods' and the U.C.C. therefore is not directly applicable to contracts involving the provision of electricity"); *Farina,* 81 A.D.2d at 701, 438 N.Y.S.2d 645 (same).

Niagara Mohawk's reliance on case authority in which New York Courts have applied U.C.C. § 2–609 outside the code context is misplaced. In those cases, the courts employed other provisions of the U.C.C. to illuminate a comparable common law rule already in existence.[11] *See, e.g., Teachers Ins. & Annuity Ass'n of America v. Coaxial Communications, Inc.,* 807 F.Supp. 1155, 1159 (S.D.N.Y.1992) (discussing right, under New York common law and U.C.C. § 2–610, to suspend performance upon repudiation by other party to contract); *CBS v. Ziff–Davis Publishing Co.,* 75 N.Y.2d 496, 506, 554 N.Y.S.2d 449, 553 N.E.2d 997 (Ct.App.1990) ("analogy to [U.C.C. 2–607] is 'instructive'"

---

9. New York common law does recognize a right to demand adequate assurances after a party to a contract becomes insolvent. *See Updike v. Oakland Motor Car Co.,* 229 A.D. 632, 635, 242 N.Y.S. 329, 333 (1st Dep't 1930); *Hanna v. Florence Iron Co.,* 222 N.Y. 290, 300, 118 N.E. 629 (Ct.App.1918); *Pardee v. Kanady,* 100 N.Y. 121, 126–27, 2 N.E. 885 (Ct.App.1885). At a Pre–Trial Conference on January 6, 1995, Niagara Mohawk waived any claims of current insolvency of either Encogen or NorCon. To the extent that Niagara Mohawk alleges potential insolvency decades in the future, New York common law does not recognize a right to demand adequate assurance based on a speculative or remote risk of future insolvency.

10. U.C.C. § 2–609 provides, in pertinent part:

(1) A contract for sale imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired. When reasonable grounds for insecurity arise with respect to the performance of

either party the other may in writing demand adequate assurance of due performance, and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return....

(3) After receipt of a justified demand failure to provide within a reasonable time not exceeding thirty days such assurance of due performance as is adequate under the circumstance of the particular case is a repudiation of the contract.

U.C.C. § 2–609.

11. Niagara also relies upon *Consol. Ed.,* 590 F.Supp. at 269, where the court held that U.C.C. § 1–207 altered the common law doctrine of accord and satisfaction. However, *Consol. Ed.* is inapposite to the instant case because, unlike Article 2, U.C.C. § 1–207 is not limited to contracts involving the sale of goods. *See Horn Waterproofing Corp. v. Buswick Iron,* 66 N.Y.S.2d 321, 329–30, 497 N.Y.S.2d 310, 488 N.E.2d 56 (Ct.App.1985).

in determining breach of express warranty under New York common law in non-goods context). However, there is no comparable existing common law right to demand adequate assurances which can be illuminated by any analogy set forth in U.C.C. § 2–609.

It follows that the U.C.C. does not provide Niagara Mohawk the right to demand from Encogen adequate assurances of its ability to perform under the Encogen Agreement. Indeed, Niagara Mohawk has, on more than one occasion, successfully urged New York courts to hold that the U.C.C. does not apply to contracts involving the sale of electricity. *See Farina,* 81 A.D.2d at 701, 438 N.Y.S.2d 645; *Zoller v. Niagara Mohawk,* 137 A.D.2d 947, 525 N.Y.S.2d 364, 367 (3 Dep't.1988); *c.f. Bowen,* 590 N.Y.S.2d at 631 (Niagara Mohawk successfully argued electricity is service and not product subject to strict products liability).

Niagara Mohawk further argues that § 251 of the Restatement (Second) of Contracts creates the right to demand adequate assurances under New York law,[12] However, here too, the contention is unsupported by the cases relied on, in which New York Courts used various sections of the Restatement to clarify or illuminate contract principles *already recognized under New York common law. See, e.g., Marvel Entertainment Group, Inc. v. ARP Films, Inc.,* 684 F.Supp. 818, 820–21 (S.D.N.Y.1988) (refusing, in dictum, to adopt § 251 as law of New York); *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.,* 66 N.Y.2d 38, 44, 495 N.Y.S.2d 1, 5, 485 N.E.2d 208, 212 (1985) (Restatement § 313(2) "state[s] the essence of the prior holdings of this court" relating to third party beneficiaries to a contract); *Teachers Ins. & Annuity Ass'n,* 807 F.Supp. at 1159 (Restatement §§ 237, 240–42 employed to illuminate existing common law rules of repudiation and anticipatory breach). The Restatement, however, is not the sub-

stantive law of New York and creates no rights not already incorporated by New York statutory and common law.

Niagara Mohawk further contends that the right to demand adequate assurances is a corollary to the prohibition under New York regulatory law against electricity rates set by the PSC that "would result in a substantial overcharge to [the utility's] rate payers." *Long Island Lighting Co. v. Pub. Serv. Comm'n,* 199 A.D.2d 831, 833, 606 N.Y.S.2d 406 (3d Dep't.1993), because to refuse to require such security would allow cogeneration facilities such as Encogen to overcharge state rate payers in contravention of the requirement of "just and reasonable rates." PSL § 66–c. However, in enacting PURPA, Congress provided a comprehensive statutory structure covering administrative rulemaking, the setting of utility rates, commission enforcement and judicial review and enforcement. PURPA § 824a–3. Likewise, the New York legislature enacted a detailed scheme promoting conservation of energy and the development of alternate energy sources by, *inter alia,* specifying rate-making and financing mechanisms. PSL § 66–c. Notwithstanding that comprehensive regulatory scheme, neither Congress nor the New York legislature created a right to demand adequate assurances where an otherwise approved rate might, in the distant future, prove economically disadvantageous to the utility purchaser.

Moreover, although the parties foresaw the risk of accumulation in the adjustment account, the Encogen Agreement provides that "Niagara's *exclusive* remedy for [Encogen's] failure to pay the balance of the adjustment Account is to foreclose its lien upon the [Encogen] plant." Encogen Agreement ¶ 9 (emphasis added). In light of the legislative decision not to provide the right to demand adequate assurances, Niagara Mohawk's fail-

---

12. Section 251 of the Restatement (Second) of Contracts provides, in pertinent part:

(1) Where reasonable grounds arise to believe that the obligor will commit a breach by non-performance that would of itself give the obligee a claim for damages for total breach under § 243, the obligee may demand adequate assurance of due performance and may, if reasonable, suspend any performance for

which he has not already received the agreed exchange until he receives such assurance.

(2) The obligee may treat as a repudiation the obligor's failure to provide within a reasonable time such assurance of due performance as is adequate in the circumstances of the particular case.

Section 251, RESTATEMENT (SECOND) OF CONTRACTS.

ure to cite any relevant legal authority thereof and the parties' failure to contractually provide for such a right, the Court sees no reason to depart from established New York common law.

## CONCLUSION

For the reasons stated above, Encogen's motion pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings dismissing Niagara Mohawk's counterclaim shall be and hereby is granted. NorCon's motion for summary judgment pursuant to Fed.R.Civ.P. 56 shall be and hereby is granted on the issue of Niagara Mohawk's right to demand adequate assurances and denied without prejudice as to the remaining issues. The parties are directed to appear before this Court for a Pre–Trial Conference on February 22, 1996 at 1:30 p.m. in Courtroom 705.

It is **SO ORDERED.**