**NORCON POWER PARTNERS, L.P.,**
**Plaintiff-Counter-Defendant-**
**Appellee,**

v.

**NIAGARA MOHAWK POWER CORP.,**
**Defendant-Counter-Claimant-**
**Appellant.**

**No. 367, Docket 96–7283.**

United States Court of Appeals,
Second Circuit.

March 26, 1997.

---

Present: FEINBERG, WALKER, and JACOBS, Circuit Judges.

*ORDER*

This is an appeal from a judgment of the United States District Court for the Southern District of New York, John E. Sprizzo, *District Judge,* declaring, *inter alia,* that appellant has no right to demand additional security or other adequate assurances of the performance of appellee's contractual obligations. On consideration of the briefs, appendix, record, and the oral argument in this appeal, it is hereby ORDERED that the Clerk of this court transmit to the Clerk of the New York Court of Appeals a certificate in the form attached, together with a complete copy of the briefs, appendix and record filed by the parties with this court. This panel retains jurisdiction so that, after we receive a response from the New York Court of Appeals, we may dispose of the appeal.

Certificate to the New York Court of Appeals pursuant to Second Circuit Local Rule § 0.27 and New York Court of Appeals Rule § 500.17.

In March 1994, Norcon Power Partners, L.P. ("Norcon"), brought an action against Niagara Mohawk Power Corporation ("Niagara Mohawk") seeking declaratory and injunctive relief to prevent Niagara Mohawk from terminating a contract for the sale of power from Norcon to Niagara Mohawk. Norcon, a Delaware limited partnership, is an independent power producer that owns and operates a power plant located in Erie, Pennsylvania. In 1989, Niagara Mohawk and Norcon entered into a long term contract obligating Niagara Mohawk to purchase electricity produced at Norcon's power plant. The contract, as amended in 1991, is divided into three pricing periods.

In the first period, Niagara Mohawk pays Norcon six cents per kilowatt-hour for electricity. In the second and third periods, the price paid by Niagara Mohawk is based on its "avoided cost." The avoided cost reflects the cost that Niagara Mohawk would incur to generate electricity itself or purchase it from other sources. In the second period, if the avoided cost falls below a certain floor price (calculated according to a formula), Niagara Mohawk is obligated to pay the floor price. By the same token, if the avoided cost rises above a certain amount (calculated according to a formula), Niagara Mohawk's payments are capped by a ceiling price. An "adjustment account" tracks the difference between payments actually made by Niagara Mohawk in the second period and what those payments would have been if based solely on Niagara Mohawk's avoided cost.

In the third period, the price paid by Niagara Mohawk is based on its avoided cost without any ceiling or floor price. Payments made by Niagara Mohawk in the third period are adjusted to account for any balance existing in the adjustment account that operated in the second period. If the adjustment account contains a balance in favor of Niagara Mohawk—that is, the payments actually made by Niagara Mohawk in the second period exceeded what those payments would have been if based solely on Niagara Mohawk's avoided cost—then the rate paid by Niagara Mohawk will be reduced to reflect the credit. If the adjustment account contains a balance in favor of Norcon, Niagara Mohawk must make increased payments to Norcon. If a balance exists in the adjustment account at the end of the third period, the party owing the balance must pay the balance in full within thirty days of the termination of the third period.

In February 1994, Niagara Mohawk sent Norcon a letter ("Demand Letter") expressing Niagara Mohawk's belief that "due to changes in economic conditions" since the contract was signed, "Norcon cannot and will

not perform its repayment obligations in the later years of the [contract]." According to the Demand Letter, Niagara Mohawk believed that studies based on new avoided cost estimates demonstrated that the adjustment account will accumulate substantial credits in the second pricing period in favor of Niagara Mohawk. Niagara Mohawk claimed that Norcon will be unable to repay the credits due Niagara Mohawk in the third period. In order to prevent this possible loss to Niagara Mohawk, the Demand Letter requested that "Norcon provide adequate assurance to Niagara Mohawk that Norcon will duly perform all of its future repayment obligations."

Norcon initiated this suit to obtain a declaratory judgment that Niagara Mohawk has no right to demand any adequate assurance beyond what is provided for in the contract. Norcon also requested a permanent injunction to enjoin Niagara Mohawk from terminating the contract for the reasons set forth in the Demand Letter. Niagara Mohawk counterclaimed, seeking a declaratory judgment that it properly exercised its rights to demand adequate assurance of Norcon's future performance.

The district court rejected Niagara Mohawk's argument that, under New York common law, a party to a contract may demand adequate assurance of future performance, and then treat the failure to provide the assurance as the repudiation of the contract. *See Encogen Four Partners v. Niagara Mohawk Power Corp.*, 914 F.Supp. 57, 60, 63 (S.D.N.Y.1996). The district court found that "no such right exists under New York common law." *Id.* at 60–61. Niagara Mohawk also relied on § 2–609 of the Uniform Commercial Code ("U.C.C."), which allows a party to demand adequate assurance of future performance, to argue that New York courts apply the principle underlying § 2–609 to contracts not governed by the U.C.C. The district court found no basis in New York statutory or common law supporting Niagara Mohawk's position and held, *inter alia,* that Niagara Mohawk had no right to demand adequate assurance from Norcon. *See Encogen,* 914 F.Supp. at 63.

On appeal, Niagara Mohawk argues that the New York Court of Appeals would recognize the right to demand adequate assurance of future performance in contracts similar to the one at issue in this case.

■ The traditional common law rule in New York is that a party has no right to demand adequate assurance of performance. *See Schenectady Steel Co. v. Bruno Trimpoli Gen. Constr. Co.*, 43 A.D.2d 234, 236, 350 N.Y.S.2d 920 (3d Dep't) ("at common law no such duty to provide adequate assurances existed"), *aff'd on other grounds,* 34 N.Y.2d 939, 941, 359 N.Y.S.2d 560, 316 N.E.2d 875 (1974); *O'Shanter Resources, Inc. v. Niagara Mohawk Power Corp.*, 915 F.Supp. 560, 566 (W.D.N.Y.1996); *Elliott Assocs. v. Bio–Response, Inc.*, Civ.A.No. 10624, 1989 WL 55070, at *3, *reargument denied,* 1989 WL 72028, at *1 (Del.Ch.1989); E. Allan Farnsworth, *Contracts* § 8.23 (2d ed.1990). There is an exception to this rule. If a promisor becomes insolvent, the promisee may request adequate assurance of future performance from the promisor. *See Pardee v. Kanady,* 100 N.Y. 121, 126–27, 2 N.E. 885 (1885); *Updike v. Oakland Motor Car Co.*, 229 A.D. 632, 635, 242 N.Y.S. 329 (1st Dep't 1930); *Hanna v. Florence Iron Co. of Wis.*, 222 N.Y. 290, 300, 118 N.E. 629 (1918). Niagara Mohawk does not claim that Norcon is currently insolvent, and, unless a contract is governed by the U.C.C., New York law does not recognize any right to demand adequate assurance when one party believes that the other party may become insolvent in the future.

If a contract is governed by the U.C.C., a party may demand adequate assurance of future performance under § 2–609. U.C.C. § 2–609 provides in pertinent part:

(1) A contract for sale imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired. When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance for which he has not already received the agreed return. . . .

(4) After receipt of a justified demand failure to provide within a reasonable time not

exceeding thirty days such assurance of due performance as is adequate under the circumstances of the particular case is a repudiation of the contract.

N.Y. U.C.C. Law § 2–609. Restatement (Second) of Contracts § 251 expresses a principle similar to U.C.C. § 2–609.

The right to demand adequate assurance contained in U.C.C. § 2–609 and Restatement § 251 reflects the principle that contracting parties look to actual performance "and that a continuing sense of reliance and security that the promised performance will be forthcoming when due[ ] is an important feature of the bargain." N.Y. U.C.C. Law § 2–609 cmt. 1. The right was designed to " 'provide a remedy for one party's reasonable fears that the other party to a contract will not perform.' " *O'Shanter Resources,* 915 F.Supp. at 566 (quoting James J. White, *Eight Cases and Section 251,* 67 Cornell L.Rev. 841, 841 (1982)); *see Marvel Entertainment Group, Inc. v. ARP Films, Inc.,* 684 F.Supp. 818, 820–21 (S.D.N.Y.1988) (discussing principles of Restatement § 251).

However, some authorities argue that the right to demand adequate assurance may not mitigate many of the problems faced by a party who has substantial concerns about the ability of the other party to perform the contract. A party, and eventually a court, may have to determine what constitutes "reasonable grounds for insecurity" or "adequate" assurance. "Partly as a result of the uncertain application of the concepts involved, section 2–609 sometimes does little more than extend the minuet between the weaseling party and the contractual counterpart and add a couple of new moves." 1 James J. White & Robert S. Summers, *Uniform Commercial Code* § 6–2 (4th ed.1995); *cf. Mollohan v. Black Rock Contracting, Inc.,* 160 W.Va. 446, 235 S.E.2d 813, 816 n. 1 (1977) (declining to adopt Restatement position "except to the extent that a demand for assurances and failure to give them may be evidence of repudiation to present to a jury with other evidence to prove ... positive repudiation and anticipatory breach"). *But see* 4 Ronald A. Anderson, *Anderson on the Uniform Commercial Code* § 2–609:6 (3d ed.1983) ("[c]ourts ... will undoubtedly expand the application of U.C.C. § 2–609 to transactions that do not come within the ... Code").

We express no opinion on the correctness of the differing views on the wisdom of allowing parties to demand adequate assurance of performance generally or in a case such as this.

Whether the principles underlying U.C.C. § 2–609 and Restatement § 251 will be extended in New York to contracts other than those for the sale of goods is unclear. Our research has not disclosed New York authority accepting the right to demand adequate assurance where a party is solvent and the contract is not governed by the U.C.C.

■ Resolution of this issue may have a substantial impact on existing and future contracts not governed by the U.C.C. *See, e.g, Elliott Assocs.,* 1989 WL 72028, at *1 (discussing party's request for adequate assurance that terms of company's indenture would be performed); *Marvel Entertainment,* 684 F.Supp. at 820–21 (discussing party's request for adequate assurance that contract governing rights to cartoons would be performed). Accordingly, we certify the following question to the New York Court of Appeals:

> Does a party have the right to demand adequate assurance of future performance when reasonable grounds arise to believe that the other party will commit a breach by non-performance of a contract governed by New York law, where the other party is solvent and the contract is not governed by the U.C.C.?

We think this issue is appropriate for resolution by the New York Court of Appeals because of the lack of authoritative guidance on an issue with significant impact on New York contract law. Resolution of the dispute between parties to this action also has important implications for New York utility companies, regulators, and customers. A determination of the issue by the Court of Appeals will remove any question as to the extension of the right to demand adequate assurance of performance to contracts outside the scope of the U.C.C.

The foregoing is hereby certified to the Court of Appeals of the State of New York as ordered by the United States Court of Appeals for the Second Circuit.